NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| SCOTT E. TELLEP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 18-392-BRM-TJB |
| v. | : | |
| | : | |
| OXFORD HEALTH PLANS, *et al.*, | : | |
| | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Oxford Health Insurance, Inc., Oxford Health Plans (NJ), Inc., Oxford Health Plans, LLC, Oxford Health Plans, and UnitedHealthCare Insurance Company's ("Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 6.) Plaintiff Scott E. Tellep ("Plaintiff") opposes the Motion (ECF No. 7). Having reviewed the submissions filed in connection with the motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for reasons set forth below and for good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

### I.      BACKGROUND

For the purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Philips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

Defendants are insurers and administrators of health benefit plans. (Am. Compl., Ex. A (ECF No. 1-1) at 2.) In the mid-1990s, Plaintiff was diagnosed with a seizure disorder and placed on a brand-name prescription medication, Lamictal, for treatment purposes. (*Id*. at 2-3.) In October 2011, Plaintiff, a self-employed working owner, purchased a health insurance plan from Defendants to receive health benefits, including coverage for the cost of his seizure medication. (*Id*.) While on Lamictal, Plaintiff's seizures were well controlled. (*Id*. at 3.) In July 2015, Defendants allegedly contacted Plaintiff's physician, Dr. Mian, and advised her the brand-name medication was no longer covered, but instead, Lamotrigine, the generic equivalent of Lamictal, would be covered. (*Id*.) Plaintiff claims Defendants demanded Dr. Mian replace Plaintiff brand-name medication with the generic equivalent. (*Id*.) According to Plaintiff, Dr. Mian objected without unsuccess, and Plaintiff was switched to the generic equivalent. (*Id*.)

On October 14, 2015, Plaintiff began experiencing breakthrough seizures while on the generic equivalent. (*Id*. at 4.) Once notified, Defendants agreed to pay for the brand-name medication. (*Id*.) Nonetheless, Plaintiff continued to experience breakthrough seizures after switching back to the brand-name medication. (*Id*.) Plaintiff attributed the initial change from the brand-name medication to the generic equivalent as the cause of the breakthrough seizures. (*Id*.) According to Plaintiff, the seizures have restricted his ability to drive, operate his business, and participate in outdoor activities without supervision. (*Id*.) Plaintiff claims he relied on Defendants to keep their contractual promise made under the health insurance plan, and the decision to cease coverage of the brand-name medication constituted a wrongful termination of benefits. (*Id*. at 4-5.)

Plaintiff now brings twenty-five counts against Defendants, alleging the denial of health insurance benefits constituted: (1) breach of contract (Counts One through Three); (2) violation

of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, *et seq*. (Counts Four

through Twelve); (3) violation of the Unfair Claim Settlement Practice Act ("UCSPA"), N.J.S.A

17B:30-13.1(d) (Counts Thirteen through Fifteen); (4) breach of fiduciary duty (Counts Sixteen

through Eighteen); (5) violation of the New Jersey Law Against Discrimination ("NJLAD"),

N.J.S.A. § 10:5-1, *et seq*. (Counts Nineteen through Twenty-One); (6) negligent hiring of

employees (Counts Twenty-Two to Twenty-Four); and (7) common law negligence (Count

Twenty-Five). (*Id*. at 5-22.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to

accept as true all factual allegations in the complaint and draw all inferences in the facts alleged

in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228 (3d Cir. 2008). "[A]

complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell

Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v.

Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual

allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DECISION

In moving to dismiss Plaintiff's First Amended Complaint, Defendants argue all Plaintiff's claims are preempted by ERISA. (ECF No. 6 at 1.) Accordingly, "the existence of the federal claim would provide the basis for federal question jurisdiction . . . [and] require dismissal based on complete preemption." *Id*. at 446. Therefore, the Court addresses each of Plaintiff's state law claims in turn.

### A. ERISA Preemption

Defendants argue Plaintiff's state law claims are completely preempted by ERISA. (ECF No. 6 at 6.) Specifically, Defendants allege "claims based on the processing of benefits under an employee benefit plan—even if styled in a complaint as arising under state law—are deemed to 'relate to' that benefit plan, and therefore fall under ERISA's preemption clause." (*Id.* at 8.)

Plaintiff contends ERISA does not preempt the state law claims. (ECF No. 7 at 9.) Specifically, Plaintiff argues an insurance plan for a self-employed worker is not an ERISA plan, and therefore not subject to preemption. (*Id*. at 10.) Further, to the extent the health insurance plan is considered an ERISA-governed plan, Plaintiff asserts Defendants made a medical determination for treatment purposes, not an eligibility determination, and therefore the state law claims are not preempted by ERISA. (*Id*. at 11-13.)

"ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *In re Unisys Corp. Retiree Med. Benefits "ERISA" Litig.*, 58 F.3d 869, 901 (3d Cir. 1995). Under the complete preemption doctrine, federal courts recognized "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

Notably, the Supreme Court has recognized Section 502(a) of ERISA as "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint into one stating a federal claim." *Pascack Valley Hosp., Inc.*, 388 F.3d at

399-400 (quoting *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 211 (2004)). Indeed, the Supreme

Court articulated:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA [Section] 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA [Section] 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA [Section] 502(a)(1)(B).

*Davilla*, 542 U.S. at 210.

Relying on the Supreme Court's holding, the Third Circuit established a two-prong test

for determining whether a state law claim is completely preempted by ERISA. *Pascack Valley*

*Hosp., Inc.*, 388 F.3d at 400. Specifically, a state law claim is completely preempted when: (1) a

plaintiff could have brought the claim within the scope of Section 502(a); and (2) "no other

independent legal duty is implicated by a defendant's actions." *Id.*

Section 502(a), ERISA's civil enforcement remedy, allows a "participant or beneficiary"

to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

plan."[1] *Pascack Valley Hosp. Inc.*, 388 F.3d at 400 (quoting 29 U.S.C. § 1132(a)(1)(B)); *see also*

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987); *Firestone Tire & Rubber Co. v. Bruch*,

489 U.S. 101, 108 (1989). In determining whether a claim falls within the scope of Section

---

[1] ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

502(a) of ERISA, "the court must examine the complaints, the statute on which the claims are based, and the various plan documents." *Davila*, 542 U.S. at 211. Significantly, to fall within the scope of Section 502(a), the Third Circuit explained:

> Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of [Section] 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action.

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 228 (2000)). In other words, the Third Circuit's complete preemption analysis distinguishes between "*eligibility decisions*, which turn on the plan's coverage of a particular condition or medical procedure for its treatment," and "*treatment decisions*, which are choices in diagnosing and treating a patient's condition." *DiFelice v. Aetna U.S. Healthcare*, 346 F. 3d 442, 447 (3d Cir. 2003) (quoting *Prybowski*, 245 F.3d at 273). Accordingly, a claim based on an administrator's eligibility decision is preempted by ERISA, but a claim based solely on a medical treatment decision is not preempted by ERISA. *Id*. at 448.

Notwithstanding this distinction, the Third Circuit recognized certain claims might rise from decisions based on the distinction between eligibility and treatment. In those cases, the court "must scrutinize the complaint for 'artful pleading,' and then refer to [S]ection 502(a) itself and determine whether the actual alleged wrongdoing underlying the cause of action could have formed the basis of a suit under that section." *Id*.

Once determined whether a plaintiff's claim falls within the scope of Section 502(a), a state law claim is completely preempted by ERISA if no other independent legal duty exists. *See N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 303 (3d Cir. 2014) ("Because the [*Pascack*] test is conjunctive, a state-law cause of action is completely preempted only if both of

its prongs are satisfied."). A court finds "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *Id.* (citation omitted). Accordingly, "if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (quoting *Gardner v. Heartland Indus, Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

Here, Plaintiff's health insurance plan is an ERISA plan, and therefore the state law claims are subject to preemption. The statutory language of an ERISA-governed employee benefit plan includes health insurance plans providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002. Indeed, Plaintiff concedes he purchased his health insurance plan from Defendants to receive medical benefits and coverage for the costs of his seizure medication. (ECF No. 1-1 at 2-3.)

Moreover, to the extent Plaintiff argues self-employed workers are not part of an ERISA plan, as a working owner of his business, Plaintiff qualifies as a "participant" as defined under ERISA. *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 16 (2004) ("Congress intended working owners to qualify as plan participants."). The Supreme Court in *Yates* explained, "[p]lans that cover only sole owners or partners and their spouses . . . falls outside of Title I's domain, while plans that cover working owners *and* their nonowner employees fall entirely within ERISA's compass." 541 U.S. at 21 (emphasis in original). Plaintiff claims he purchased the health insurance plan as a self-employed individual (ECF No 1-1 at 3), but does not claim to be the only member of his business. Indeed, the plan Plaintiff purchased was a Small Group Health Benefits Plan. (Oxford Health Benefit Plan, Ex. B (ECF

No. 6-5) at 1); s*ee also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (finding a court may consider any "document integral to or explicitly relied upon in the complaint"). The policy defines a Health Benefits Plan as "any hospital and medical expense insurance policy . . . to a Small Employer group." (*Id.* at 9.). The policy defines a Small Employer group as a "business that employed an average of at least one but not more than 50 eligible Employees," whereas "partners, proprietors and independent contractors are not employees." (*Id.* at 8, 12.). Therefore, a review of the pleadings indicates Plaintiff was a working owner with non-owner employees, and therefore the health insurance plan he purchased falls entirely within ERISA's compass. *See Levin v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005) (noting "[i]t is impossible to determine the merits of an [i]nsureds' claim without delving into the provisions of their ERISA-governed plan," before finding the plaintiff's state law claims were completely preempted by ERISA).

Furthermore, Plaintiff does not challenge whether any other independent legal duty exists. Rather, Plaintiff's state law claims are based solely on Defendants' "contractual promises made under the health insurance policy and [for Defendants] to abide by their duties and obligations under that policy." (ECF No. 1-1 at 4.) Accordingly, the only remaining issue is whether Plaintiff's claims could have been brought under ERISA. Specifically, if Plaintiff's state law claims challenge the administration of or eligibility for benefits, or are otherwise "encompassed within the relief available under [S]ection 502(a)," then the claims could have been brought under ERISA, and are therefore completely preempted. *DeFelice*, 346 F. 3d at 448.

1.     Negligence Claim

Plaintiff alleges Defendants "contacted Dr. Mian and advised that they would not continue to pay for the Lamictal prescription and demanded that Dr. Mian put [P]laintiff on

generic medication." (ECF No. 1-1 at 3.) Therefore, Plaintiff argued Defendants "were negligent in their decision to deny coverage of [P]laintiff's necessary medication." (*Id.* at 21-22.) Specifically, Plaintiff contends his state law claims are not preempted by ERISA because Defendants made a medical determination, "impact[ing] the quality of care that he was provided." (ECF No. 7 at 11.) However, reading behind Plaintiff's "artful pleading," Defendants' decision to pay for the generic equivalent, rather than the brand-name medication, is not an engagement in medical treatment. *See Pryzbowki*, 245 F.3d at 274 ("[A] federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law[.]" (quotation omitted)); *DeFelice*, 346 F.3d at 449 (finding that, although the plaintiff alleged an insurer negligently interfered with medical care by denying coverage for a specific treatment, the state law claims were preempted because no allegation was made of actual medical care provided by the insurer). Rather, Defendants' role was limited to the administration of benefits, not as a provider of medical care, and therefore could not engage in medical treatment. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177 (3d Cir. 2014) ("ERISA preempts claims regarding coverage or denial of benefits 'even when the claim is couched in terms of common law negligence and breach of contract.'" (quoting *Pryzbowski*, 245 F.3d at 278)). Rather, the actual alleged wrongdoing underlying the state law claims was a denial of benefits made under Plaintiff's ERISA-governed health insurance plan.

Moreover, Plaintiff's reliance on *Dukes v. U.S. Healthcare, Inc.* is misplaced. 57 F.3d 350 (3d Cir. 1995). In *Dukes*, the Third Circuit found the plaintiff's state law claims were not preempted by ERISA because the claims involved the "the low quality of the medical treatment that was actually received," not a failure to provide medical benefits. *Id.* at 357. The court found

the insurance administrator's policy to discharge newborns within 24-hours after delivery was a medical determination, and therefore not preempted by ERISA. *Id.* at 358. However, in this case, Defendants' decision was not based on diagnosis or treatment, but on eligibility, "which turns on the plan's coverage of a particular condition or medical procedure for its treatments." *Pryzbowki*, 245 F.3d at 273 (quotation omitted); *see also Lone Star OB/GYN Assocs. v. Aetna Heath Inc.*, 579 F.3d 525, 530-31 (5th Cir. 2009) (finding state law claims are completely preempted when "any determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service' . . . fall[s] within ERISA"). Defendants did not terminate treatment, but rather denied coverage of the brand-name medication while approving coverage of the generic equivalent. Indeed, "a claim alleging that an [insurance company] declined to approve certain requested medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits." *Pryzbowki*, 245 F.3d at 273. Therefore, because Defendants' decision was based solely on the administration of benefits, Plaintiff's negligence claim could have been brought under Section 502(a), and therefore is completely preempted by ERISA. *See Davila*, 542 U.S. at 211 ("Upon the denial of benefits, [the plaintiff] could have paid for the treatment themselves and then sought reimbursement though a [Section] 502(a)(1)(B) action, or sought a preliminary injunction."). Accordingly, Defendants' Motion to Dismiss Count Twenty-Five for common law negligence is **GRANTED**.

2.  Breach of Contract Claim

With respect to the breach of contract claims, Plaintiff's claims stem solely from Defendants' alleged failure to provide benefit payments for Plaintiff's seizure medication. (ECF No. 1-1 at 5-7.) The only contract at issue is the ERISA-governed health insurance plan, and Section 502(a) provides a remedy for a claim alleging wrongful denial of benefits. *See Lazorko*

*v. Pa. Hosp.*, 237 F.3d 242, 250 (3d Cir. 2000) ("One example of complete preemption is a claim for denial of benefits under an ERISA plan.") Indeed, Plaintiff could have brought suit under Section 502(a) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Because the state law claim is based on the administration of benefits, Plaintiff's breach of contract claims are completely preempted by ERISA. *See Taylor*, 481 U.S. at 66 (finding the plaintiff's state law breach of contract claim fell within the scope of Section 502(a), and therefore preempted by ERISA); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989) (holding breach of contract claims are preempted by ERISA); *Larzik v. Local 464A UFCW Union Welfare Serv. Benefit Fund*, No. 12-5831, 2013 WL 1987214, at *5 (D.N.J. May 13, 2013) (dismissing breach of contract claim because it was preempted by ERISA); *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, No. 14-6175, 2015 WL 5770474, at *3 (D.N.J. Sept. 30, 2015) (finding the "breach of contract claims obviously look for recovery of insurance benefits under the insureds' health plan, and so they fall within the scope of [Section] 502(a)"). Accordingly, Defendants' Motion to Dismiss Counts One through Three for common law breach of contract is **GRANTED**.

3.    Breach of Fiduciary Duty Claims

With respect to the breach of fiduciary duty claim, Plaintiff alleges Defendants' "conduct constitutes a breach of fiduciary duty of loyalty and a duty to exercise reasonable skill and care in the handling of [P]laintiff's health insurance claims and benefits." (ECF No. 1-1 at 15-16.) However, "a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive." *Davila*, 542 U.S. at 214 n.4. Indeed, Plaintiff could have brought his

breach of fiduciary duty claim under Section 502(a)(3) of ERISA. *See Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1293-94 (3d Cir. 1993) (finding a "direct action for breach of fiduciary duty exists in the 'other appropriate equitable relief' clause of ERISA [Section] 502(a)(3)(B)"). Therefore, because a claim alleging failure to handle an ERISA-governed plan supplements the scope of relief provided by Section 502(a), Plaintiff's breach of fiduciary duty claim is completely preempted by ERISA. *Davila*, 542 U.S. at 209. ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). Accordingly, Defendants' Motion to Dismiss Counts Sixteen through Eighteen for common law breach of fiduciary duty is **GRANTED**.

## 4. New Jersey Consumer Fraud Act Claims

Plaintiff alleges Defendants' refusal to pay for the brand-name medication and decision to deny coverage constituted a violation of the NJCFA. (ECF No. 1-1 at 7-13.) However, state law claims alleging fraud based on the agreement of an employee benefit plan are also preempted by ERISA. *See Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014); *Grimes v. Prudential Fin., Inc.*, No. 09-419, 2010 WL 2667424, at *18 (D.N.J. June 29, 2010) (finding the plaintiff's NJCFA claim was preempted by ERISA because the "consumer fraud claim [was] premised on the alleged wrongful denial of benefits under the Plan, [made] reference to the Plan, and would require reference to the Plan to calculate recovery if [p]laintiff proved successful"); *D'Alessandro v. Hartford Life & Accident Ins. Co.*, No. 09-115, 2009 WL 1228452, at *3 (D.N.J. May 1, 2009) (finding the plaintiff's NJCFA claim was preempted by ERISA because "the claim relate[d] to the employee benefit plan since it require[d] reference to the policy . . . [and] would require interpretation of the policy"); *Thomas v. Aetna Inc.*, No. 98-

2552, 1999 WL 1425366, at *9 (D.N.J. June 8, 1991) ("Because the terms of the Plan are critical

to the resolution of the fraudulent inducement claim, the plaintiff's cause of action is sufficiently

'related to' an ERISA plan to fall within the purview of ERISA's preemption clause."").

Accordingly, Defendants' Motion to Dismiss Counts Four through Twelve for violation of the

NJCFA is **GRANTED**.

5.      Unfair Claim Settlement Practice Act Claims

Further, Plaintiff alleges Defendants' refusal to pay for the brand-name medication

without conducting a reasonable investigation is a violation of the UCSPA. (ECF No. 1-1 at 13-

16.) However, similar to the other state law claims, Plaintiff's UCSPA claim is brought only to

rectify the denial of benefits of an ERISA-governed plan. Because this cause of action seeks to

remedy a denial of benefits, Plaintiff could have brought the claim under Section 502(a), and it is

therefore preempted by ERISA. *See Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700 (D.N.J. Mar. 1,

2016) (dismissing all state law claims "they are merely different theories by which [the

plaintiffs] seek recovery for the same conduct"). Accordingly, Defendants' Motion to Dismiss

Counts Thirteen through Fifteen for violation of the UCSPA is **GRANTED**.

6.      New Jersey Law Against Discrimination Claims

Defendants argue Plaintiff's NJLAD claim is preempted by ERISA and, if NJLAD is not

preempted, then Plaintiff failed to state a claim for relief. (ECF No. 6 at 14.) Plaintiff alleges

Defendants discriminated against him for his seizure disorder in violation of the New Jersey Law

Against Discrimination. (ECF No. 1-1 at 17-19.) The NJLAD, however, does not apply to

insurance plans, stating in relevant part:

> Nothing in this act . . . shall be construed . . . to interfere with the
> operation of the terms or conditions and administration of any bona
> fide retirement, pension, employee benefit or insurance plan or
> program.

*Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 690 (D.N.J. 2002) (citing N.J.S.A. § 10:5-2.1); *see also Yourman v. People's Sec. Life Ins. Co.*, 992 F. Supp. 696, 703-04 (D.N.J. 1998) (finding "no indication from the New Jersey state legislature or state supreme court" for NJLAD to apply against *bona fide* insurance plans). Therefore, Plaintiff does not have a claim for relief pursuant to the NJLAD. Accordingly, Defendants' Motion to Dismiss Counts Nineteen through Twenty-One for violation of NJLAD is **GRANTED**.

       7.       <u>Negligent Hiring and Supervision Claims</u>

Defendants argue Plaintiff failed to state a claim for relief for negligent hiring and supervision. (ECF No. 6 at 15.) Plaintiff alleges Defendants were negligent when hiring the employees who provided Plaintiff with services. (ECF No. 1-1 at 20-21.) Under New Jersey common law, to establish a claim of negligent hiring, a plaintiff must establish:

> (1) the employer knew or had reason to know of the employee's particular incompetence, unfitness, or dangerous attributes,
>
> (2) the risk of harm to others created by these qualities could have been reasonably foreseen by the employer, and
>
> (3) the employee's dangerous characteristic or unfitness and the employer's negligence was the proximate cause of the injury."

*Raab v. City of Ocean City*, No. 11-6818, 2014 WL 3894061, at *13 (D.N.J. Aug. 8, 2014) (citing *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997). Plaintiff merely advances a conclusory statement, alleging Defendants negligently hired their employees without any further support or factual evidence. Without "more than 'an unadorned, the defendant-harmed-me accusation,'" Plaintiff's allegation fails to show his entitlement to relief. *Iqbal*, 556 U.S. at 678. Accordingly, Defendants' Motion to Dismiss Counts Twenty-Two through Twenty-Four for negligent hiring and supervision is **GRANTED**.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 6) Plaintiff's

Complaint is **GRANTED**. An appropriate order will follow.


**Date:** September 25, 2018            */s/ Brian R. Martinotti*
                                        **HON. BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**