NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|                          |   |                              |
|--------------------------|---|------------------------------|
|                          | : |                              |
| SCOTT E. TELLEP,         | : |                              |
|                          | : |                              |
| Plaintiff,               | : |                              |
|                          | : | Case No. 3:18-cv-392-BRM-TJB |
| v.                       | : |                              |
|                          | : |                              |
| OXFORD HEALTH PLANS, *et al.*, | : |                        |
|                          | : | **OPINION**                  |
|                          | : |                              |
| Defendants.              | : |                              |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Oxford Health Insurance, Inc., Oxford Health Plans (NJ), Inc., Oxford Health Plans, LLC, Oxford Health Plans, and UnitedHealthCare Insurance Company's (collectively, "Defendants") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. for Judgment on the Pleadings (ECF No. 18-1).) Plaintiff Scott E. Tellep ("Tellep") opposes the Motion. (Br. in Opp'n to Def.'s Mot. to Dismiss the Compl. (ECF No. 19).) Having reviewed the submissions filed in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for reasons set forth below and for good cause shown, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

## I.     BACKGROUND

For the purposes of this Motion, the Court accepts the factual allegations in the Second Amended Complaint as true and draws all inferences in the light most favorable to Tellep. *See Philips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any

"document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

Defendants are insurers and administrators of health benefit plans. (Second Am. Compl. (ECF No. 11) at 1–2 ¶¶ 3–9.)[1] In the mid-1990s, Tellep was diagnosed with a seizure disorder and placed on a brand-name prescription medication, Lamictal, for treatment purposes. (*Id*. at 2 ¶ 3.) In October 2011, Tellep, a self-employed working owner of PSP Vinyl Logos and Sign Design ("PSP"), purchased a health insurance plan from Defendants to receive health benefits, including coverage for the cost of his seizure medication. (*Id*. at 2–3 ¶¶ 4, 12.) Tellep purchased a Small Employer Health Benefits Program which was to cover the cost of his medication and to insure up to 50 employees through the plan. (ECF Nos. 1-2 at 15, 26 and 18-3 at 3–20.) Tellep maintains there were no non-owner employees on the health plan when he purchased it. (ECF No. 11 at 2 ¶ 7.) Instead, he contends his parents, Scott and Pamela Tellep ("Mr. and Mrs. Tellep"), were his partners in the business. (*Id*. at 3 ¶ 10.) Tellep's mother, Mrs. Tellep, was covered by Tellep's insurance plan beginning in May 2014. (*Id*. at 3 ¶ 11.) Tellep contends she was covered as a "working-partner" under the plan. (*Id*.)

While on Lamictal, Tellep's seizures were well controlled. (*Id*. at 3 ¶ 14.) In July 2015, Defendants contacted Tellep's physician, Dr. Mian, and advised him Lamictal was no longer covered, but instead, the generic equivalent, Lamotrigine ("Generic") would be covered. (*Id*. at 4 ¶¶ 23–24.) Defendants demanded Dr. Mian replace Tellep's Lamictal with the Generic moving forward. (*Id*.) Despite Dr. Mian's objection Tellep was switched to the Generic. (*Id*. at 4 ¶¶ 25–27.)

---

[1] In the Second Amended Complaint, Tellep begins every new section with paragraph one. Therefore, in citing the Second Amended Complaint, the Court references both the page number and paragraph number.

On October 14, 2015, while on the Generic, Tellep began experiencing breakthrough seizures. (*Id.* at 4 ¶ 27.) Once notified, Defendants agreed to pay for the Lamictal. (*Id.* at 5 ¶ 29.) Nonetheless, Tellep continued to experience breakthrough seizures after switching back to Lamictal. (*Id.* at 5 ¶ 30.) Tellep attributed the initial change from Lamictal to the Generic as the cause of the breakthrough seizures. (*Id.*) According to Tellep, the seizures have restricted his ability to drive, operate his business, and participate in outdoor activities without supervision. (*Id.* at 5 ¶¶ 31–33.)

On November 8, 2017, Tellep filed his First Amended Complaint in New Jersey State Court. (First Am. Compl. (ECF No. 1-1).) On January 10, 2018, Defendants filed a Notice of Removal to this Court. (Notice of Removal (ECF No. 1).) On February 16, 2018, Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(6). (Defs.' Mot. to Dismiss (ECF No. 6-1).) On September 25, 2018, the Court dismissed Tellep's claims in their entirety. (Op. (ECF No. 9).) Regarding Tellep's common law negligence claim, the Court found that because Defendants' decision was "based solely on the administration of benefits, Plaintiff's negligence claim could have been brought under Section 502(a), and therefore is completely preempted by ERISA." (ECF No. 9 at 11.) The Court used the same reasoning for the breach of contract claims, breach of fiduciary duty claims, claims under the New Jersey Consumer Fraud Act ("NJCFA"), and claims under the Unfair Claim Settlement Practice Act ("UCSPA"). (*Id.* at 11–14.) The Court dismissed Tellep's claims under the New Jersey Law Against Discrimination ("NJLAD") because "Plaintiff does not have a claim for relief pursuant to the NJLAD." (*Id.* at 15.) The Court also dismissed Tellep's negligent hiring and supervision claims because "Plaintiff's allegation fails to show his entitlement to relief." (*Id.*)

Tellep now brings twenty-five nearly identical counts against Defendants in his Second Amended Complaint, alleging the denial of health insurance benefits constituted: (1) breach of contract (Counts One through Three); (2) violation of the NJCFA, N.J. Stat. Ann. 56:8-1, *et seq.* (Counts Four through Twelve); (3) violation of the UCSPA, N.J. Stat. Ann. § 17B:30-13.1(d) (Counts Thirteen through Fifteen); (4) breach of fiduciary duty (Counts Sixteen through Eighteen); (5) violation of the NJLAD, N.J. Stat. Ann. § 10:5-1, *et seq.* (Counts Nineteen through Twenty-One); (6) negligent hiring of employees (Counts Twenty-Two through Twenty-Four); and (7) common law negligence (Count Twenty-Five). (ECF No. 11 at 6–24.) On November 6, 2018, Defendants filed an Answer to the Second Amended Complaint. (Defs.' Answer to Second Am. Compl. (ECF No. 16.)) On January 10, 2019, Defendants filed a Motion for Judgment on the Pleadings. (ECF No. 18-1.) On February 5, 2019, Tellep filed a Brief in Opposition to Defendants' Motion. (Br. in Opp'n to Def.'s Mot. to Dismiss the Compl. (ECF No. 19.)) On February 13, 2019, Defendants filed a reply. (Def.'s Mem. in Reply (ECF No. 20.))

## II. LEGAL STANDARD

### A. Rule 12(c)[2]

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). In deciding a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards applicable to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, Civ. No. 12–7206 (RBK)(JS), 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to

---

[2] Tellep claims Defendants cannot bring a 12(c) Motion for Judgment on the Pleadings after they have previously filed a 12(b) Motion to Dismiss of their First Amended Complaint and an Answer to their Second Amended Complaint. (ECF No. 19 at 10.) However, Tellep fails to cite any case law confirming Defendants' inability to do so. The Court finds Defendants filed their Motion for Judgment on the Pleadings in accordance with the Federal Rule of Civil Procedure 12(c), as the motion was filed at the conclusion of the pleadings but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). While "[a] Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading," a "Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed." *Turbe v. Gov't of Virgin Is.*, 938 F.2d 427, 428 (3rd Cir. 1991), *see Prima v. Darden Restaurants, Inc*., 78 F. Supp. 2d 337, 341–42 (D.N.J. 2000) (stating a Rule 12(c) motion is filed after the answer). Therefore, Defendants have properly filed their Motion for Judgment on the Pleadings.

Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe*, 938 F.2d at 428; *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

"While a complaint attacked by a Rule 12[] motion . . . does not need detailed factual allegations," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.  DECISION

Defendants rely on the language of the health insurance plan and Tellep's application forms for the plan to support their argument that Tellep purchased an ERISA health plan under which he was the sole owner. (ECF No. 18-1.) Tellep maintains his claims are not preempted by ERISA and Defendants cannot rely on the health insurance plan and the application forms at this stage of the litigation. (ECF No. 19 at 10.)

### A.  Use of Extraneous Documents

The Court begins its analysis by addressing whether Defendants properly relied on the health insurance plan and Tellep's application forms for the plan. Indeed, in support of their Motion for Judgment on the Pleadings, Defendants refer to documents outside of Tellep's Second Amended Complaint. (ECF No. 18-1.) Specifically, they refer to PSP's Online Application Submission and Tax Form 1040 as a basis for establishing that Tellep is the sole owner of PSP. (*Id*. at 7.) Tellep argues as these documents are not part of the Second Amended Complaint and not a part of the health insurance plan, they should not be considered by the Court. (ECF No. 19 at 10.)

A motion for judgment on the pleadings is reviewed under the same standards applicable to a motion to dismiss made under Rule 12(b)(6). *See Muhammad*, 2014 WL 4418059 at *1 (citation omitted). Generally, "a district court ruling on a motion to dismiss may not consider

matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Here, Tellep "explicitly relied upon" the Oxford Health Care Plan in his Second Amended Complaint, therefore, it is appropriate for this Court and Defendants to reference and rely on it. *Id.*; *see* (ECF No. 11.)

The plan defines "policy" as "this group policy [the plan], including the application and any riders, amendments, or endorsements, between the Employer and OHI." (Oxford Health Benefit Plan, Ex. B (ECF No. 6-5) at 25.) Accordingly, PSP's Online Application Submission and Tax Form 1040 are part of the policy, as they are part of the application for the plan and therefore can also be relied upon. *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp.*, No. 12-3259, 2013 WL 2446375 (C.D. Ill. 2013) (considering an addendum because the complaint, through an attached loan agreement, specifically referred to the addendum); *see Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984) ("A contrary holding would enable plaintiffs to survive a 12(b)(6) motion where the terms of the document on which the claim is based would render the complaint insufficient as a matter of law, simply by refusing to attach the document to the complaint."). The Court may review these records without turning the Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment.

### B. ERISA Preemption

Defendants argue Tellep's state law claims are preempted by ERISA. (ECF No. 18-1 at 8.) Specifically, they allege "claims based on the processing of benefits under an employee benefit plan—even if styled in a complaint as arising under state law—are deemed to 'relate to' that benefit

plan, and therefore fall under ERISA's preemption clause." (*Id.* at 10.) Tellep contends an insurance plan for a self-employed worker is not an ERISA plan, and therefore is not subject to preemption. (*Id.* at 11.) In addition, Tellep maintains for the first time in his Second Amended Complaint, Mrs. Tellep was a partner in the business and not an employee of PSP. (*Id.*) As such, he argues, she is not an employee receiving coverage through the plan. (*Id.*) In the alternative, Tellep claims to the extent the health insurance plan is considered an ERISA-governed plan, Defendants made a medical determination for treatment purposes, not an eligibility determination, and therefore the state law claims are not preempted by ERISA. (ECF No. 11 at 4 ¶¶ 19–20.)

"ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *In re Unisys Corp. Retiree Med. Benefits "ERISA" Litig.*, 58 F.3d 869, 901 (3d Cir. 1995). Under the complete preemption doctrine, federal courts recognized "that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see also Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

The Supreme Court has recognized § 502(a) of ERISA as "one of those provisions with such 'extraordinary pre-emptive power' that it converts an ordinary state common law complaint

into one stating a federal claim." *Pascack Valley Hosp., Inc.*, 388 F.3d at 399–400 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004)). Indeed, the Supreme Court articulated:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA [Section] 502(a)(1)(B). . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA [Section] 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA [Section] 502(a)(1)(B).

*Davila*, 542 U.S. at 210.

The Third Circuit established a two-prong test for determining whether a state law claim is completely preempted by ERISA. *Pascack Valley Hosp., Inc.*, 388 F.3d at 400. Specifically, a state law claim is completely preempted when: (1) a plaintiff could have brought the claim within the scope of Section 502(a); and (2) "no other independent legal duty is implicated by a defendant's actions." *Id.*

Section 502(a), ERISA's civil enforcement remedy, allows a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[3] *Id.* (quoting 29 U.S.C. § 1132(a)(1)(B)); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989). In determining whether a claim falls within the scope of § 502(a) of ERISA, "the court must examine the

---

[3] ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

complaints, the statute on which the claims are based, and the various plan documents." *Davila*, 542 U.S. at 211. Significantly, to fall within the scope of § 502(a), the Third Circuit explained:

> Regardless of the language used, the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of [Section] 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action.

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 228 (2000)). In other words, the Third Circuit's complete preemption analysis distinguishes between "*eligibility decisions*, which turn on the plan's coverage of a particular condition or medical procedure for its treatment," and "*treatment decisions*, which are choices in diagnosing and treating a patient's condition." *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 447 (3d Cir. 2003) (quoting *Prybowski*, 245 F.3d at 273). Accordingly, a claim based on an administrator's eligibility decision is preempted by ERISA, but a claim based solely on a medical treatment decision is not preempted by ERISA. *Id.* at 448.

Notwithstanding this distinction, the Third Circuit recognized certain claims might rise from decisions based on the distinction between eligibility and treatment. In those cases, the court "must scrutinize the complaint for 'artful pleading,' and then refer to [§] 502(a) itself and determine whether the actual alleged wrongdoing underlying the cause of action could have formed the basis of a suit under that section." *Id.*

Once determined whether a plaintiff's claim falls within the scope of § 502(a), a state law claim is completely preempted by ERISA if no other independent legal duty exists. *See N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 303 (3d Cir. 2014) ("Because the [*Pascack*] test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied."). A court finds "a legal duty is 'independent' if it is not based on an obligation under

an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *Id.* (citation omitted). Therefore, "if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (quoting *Gardner v. Heartland Indus., Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

The Court finds Tellep's health insurance plan is an ERISA plan and Tellep's state law claims are preempted. First, the statutory language of an ERISA-governed employee benefit plan includes health insurance plans providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002. Indeed, Tellep concedes he purchased his health insurance plan from Defendants to receive medical benefits and coverage for the costs of his seizure medication. (ECF No. 11 at 3 ¶ 12.)

Next, Tellep qualifies as a "participant" as defined under ERISA. *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 16 (2004) ("Congress intended working owners to qualify as plan participants."). The Supreme Court in *Yates* explained, "[p]lans that cover only sole owners or partners and their spouses . . . falls outside of Title I's domain, while plans that cover working owners *and* their nonowner employees fall entirely within ERISA's compass." 541 U.S. at 21 (emphasis in original).

Here, Tellep alleges he purchased the health insurance plan as a self-employed individual. (ECF No. 11 at 2 ¶ 5.) Tellep further claims, contrary to what he plead in his First Amended Complaint and in an attempt to circumvent ERISA and revise his dismissed lawsuit, that Mrs. Tellep, who is also covered under the plan, is a "working partner" as opposed to a non-owner employee. (*Id.* at 3 ¶ 11.) He further contends as a result of there being no employees covered under the plan, the plan is not an ERISA plan. (ECF No. 19 at 11.)

However, the plan Tellep purchased was a Small Group Health Benefits Plan, which the policy defines as "any hospital and medical expense insurance policy . . . to a Small Employer group." (ECF No. 6-5 at 23.) Small Employer group is defined as a "business that employed an average of at least one but not more than 50 eligible Employees," whereas "partners, proprietors and independent contractors are not employees." (*Id*. at 26.) While Tellep has artfully plead that his parents are working partners of PSP because they provided him with the capital needed to start the business, the undisputed record proves otherwise. (ECF No. 11 at 3 ¶ 10.) When Tellep applied for the plan, he listed himself as the sole proprietor of PSP. (Defs.' Mot. for Judgment on the Pleadings, Ex. A (ECF No. 18-3) at 5.) Additionally, the application form Tellep used—Schedule C 1040—was specifically for sole proprietors and specifies that applications for partnerships and joint ventures must use a different form. (*Id*.) Mr. Tellep, who Tellep claims is a partner in the business, is explicitly listed as a non-owner employee. (*Id*. at 9, 13.) Mrs. Tellep is not listed on any of the initial application or tax documents when Tellep signed up for the plan in October 2011. On the Installation Worksheet included in the plan documents, Mrs. Tellep is listed as a plan administrator receiving coverage under the plan. (Defs.' Mot. for Judgment on the Pleadings, Ex. B (ECF No. 18-4) at 1.) Tellep states his mother does work for PSP, as she performs the business's bookkeeping. (ECF No. 11 at 3 ¶ 11.) Because she is covered under the plan, is not listed as an owner, and performs work for the company, she is also a non-owner employee under the plan.

A review of the record confirms Tellep was a working owner with non-owner employees, and therefore the health insurance plan he purchased falls entirely within ERISA's scope.[4] *See*

---

[4] The Court need not accept Tellep's factual allegations in his Second Amended Complaint if they are "unsupported conclusions and unwarranted inferences." *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (finding that "[w]hile [plaintiff] alleges in its Amended Complaint that it is [defendant's] competitor in the retail and wholesale markets, those assertions are belied by both the remaining factual allegations and the law").

*Levin v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005) (noting "[i]t is impossible to determine the merits of an [i]nsureds' claim without delving into the provisions of their ERISA-governed plan," before finding the plaintiff's state law claims were completely preempted by ERISA). Tellep does not challenge, and therefore the Court will not address, whether any other independent legal duty exists. Rather, Tellep's state law claims are based solely on Defendants' "contractual promises made under the health insurance policy and [for Defendants] to abide by their duties and obligations under that policy." (ECF No. 11 at 5 ¶ 35.) The only remaining issue is whether Tellep's claims could have been brought under ERISA. If Tellep's state law claims challenge the administration of or eligibility for benefits or are otherwise "encompassed within the relief available under [§] 502(a)," then his claims could have been brought under ERISA and are therefore completely preempted. *DiFelice*, 346 F.3d at 448.

### 1.     Breach of Contract Claims

Claims One through Three are identical to the breach of contract claims Tellep plead in his First Amended Complaint. (ECF Nos. 1-1 at 10–12 and 11 at 6–8.) This Court dismissed those claims. (ECF No. 9.) As these claims stem from Defendants' alleged failure to provide benefit payments for Tellep's seizure medication, these claims could have been brought under § 502(a) of ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As this Court has already stated, "[b]ecause the state law claims are based on the administration of benefits, Plaintiff's breach of contract claims are completely preempted by ERISA." (ECF No. 9 at 12 (citing *Taylor*, 481 U.S. at 66 (finding the plaintiff's state law breach of contract claim fell within the scope of § 502(a), and therefore preempted by ERISA); *Pane v. RCA Corp.*, 868 F.2d 631 (3rd Cir. 1989) (dismissing breach of contract claim because it was

preempted by ERISA)) (additional citations omitted).) Defendants' Motion for Judgment on the Pleadings pursuant to claims One through Three is **GRANTED**.

### 2.    New Jersey Consumer Fraud Act Claims

In Counts Four through Twelve, Tellep asserts three sets of claims against each Defendant under the NJCFA. Tellep claims Defendants' conduct and decision "for its adoption and/or enactment of a particular policy to deny coverage for Lamictal and only provide coverage for generic medication in the treatment of plan beneficiaries for seizures" constitutes: (1) a "refusal to pay" for Tellep's medication in violation of the NJCFA (claims Four through Six) (ECF No. 11 at 8–11); (2) "unethical and fraudulent insurance claims processing in violation of the [NJCFA]" (claims Seven through Nine) (*id*. at 11–13); and (3) "unconscionable exclusion of coverage in violation of the [NJCFA]" (claims Ten through Twelve) (*id*. at 13–16).

Tellep merely changes the language of each claim from the First Amended Complaint by adding the phrase: "for its adoption and/or enactment of a particular policy to deny coverage for Lamictal and only provide coverage for generic medication in the treatment of plan beneficiaries for seizures." (*Id*. at 8–16.) However, this language does not alter the violations Tellep asserts under the NJCFA. State law claims alleging fraud based on the agreement of an employee benefit plan are also preempted by ERISA. *See Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014); *Grimes v. Prudential Fin., Inc.*, No. 09-419, 2010 WL 2667424, at *18 (D.N.J. June 29, 2010) (finding the plaintiff's NJCFA claim was preempted by ERISA because the "consumer fraud claim [was] premised on the alleged wrongful denial of benefits under the Plan, [made] reference to the Plan, and would require reference to the Plan to calculate recovery if [p]laintiff proved successful"); *D'Alessandro v. Hartford Life & Accident Ins. Co.*, No. 09-115, 2009 WL 1228452, at *3 (D.N.J. May 1, 2009) (finding the plaintiff's NJCFA claim was

preempted by ERISA because "the claim relate[d] to the employee benefit plan since it require[d] reference to the policy . . . [and] would require interpretation of the policy"). While Tellep argues the plan is not an ERISA plan, as explained earlier in this Opinion and in the Court's previous Opinion, this Court finds otherwise. (ECF No. 9 at 8–9.) Defendants' Motion for Judgment on the Pleadings pursuant to claims Four through Twelve is **GRANTED**.

### 3. Unfair Claim Settlement Practices Act Claims

In Counts Thirteen through Fifteen, Tellep alleges, by Defendants' "refusal to pay for the plaintiff's necessary medication [they] did so without conducting a reasonable investigation based upon all available information in violation of the [UCSPA]." (ECF No. 11 at 16–18.) Tellep changes the language of each claim from the First Amended Complaint by adding the phrase: "for their adoption and/or enactment of a particular policy to deny coverage for Lamictal and only provide coverage for generic medication to plan beneficiaries being treated for seizures." (*Id.* at 16–18.) However, this language does not alter the violations Tellep asserts under the UCSPA. These claims are state law claims seeking to "rectify the denial of benefits, Plaintiff could have brought the claim under Section 502(a), and it is therefore preempted by ERISA." (ECF No. 9 at 14 (citing *Roche v. Aetna, Inc.*, 167 F. Supp. 3d 700 (D.N.J. Mar. 1, 2016) (dismissing all state law claims "they are merely different theories by which [the plaintiffs] seek recovery for the same conduct")).) Defendants' Motion for Judgment on the Pleadings pursuant to claims Thirteen through Fifteen is **GRANTED.**

### 4. Breach of Fiduciary Duty Claims

In Counts Sixteen through Eighteen, Tellep alleges "defendants' conduct constitutes a breach of their fiduciary duty of loyalty and a duty to exercise reasonable skill and care." (ECF No. 11 at 18–19.) Tellep changes the language of each claim from the First Amended Complaint

16

by adding the phrase: "in adopting and/or enacting a particular policy to deny coverage for Lamictal and only provide coverage for a generic medication to plan beneficiaries being treated for seizures." (*Id.*) However, this language does not materially alter the claim for a breach of fiduciary duty. Tellep still seeks relief for Defendants' failure to properly administer benefits. These claims could have been brought under § 502(a) of ERISA and therefore are preempted. (ECF No. 9 at 13 (citing *Bixler v. Cent. Pa. Teamsters Health and Welfare Fund*, 12 F.3d 1292, 1293–94 (3rd Cir. 1993) (finding "a direct action for breach of fiduciary duty exists in the 'other appropriate equitable relief' clause of ERISA Section 502(a)(3)(B)")).) Defendants' Motion for Judgment on the Pleadings pursuant to claims Sixteen through Eighteen is **GRANTED**.

### 5. Common Law Negligence

In Count Twenty-Five, Tellep asserts Defendants were negligent in denying coverage for Lamictal and only paying for the Generic. (ECF No. 11 at 23–24.) Tellep changes the language of each claim from the First Amended Complaint by adding the phrase: "to adopt and/or enact a particular policy to deny coverage for Lamictal and requiring plan beneficiaries to take generic medication for the treatment of seizures." (*Id.*) This additional language does not alter the substance of the negligence claim because Tellep still seeks relief for Defendants' failure to properly administer benefits. (ECF No. 9 at 10 (citing *Cardio Net, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177 (3d Cir. 2014) ("ERISA preempts claims regarding coverage or denial of benefits 'even when the claim is couched in terms of common law negligence and breach of contract.'")).) As this Court previously held, "because Defendants' decision was based solely on the administration of benefits, Plaintiff's negligence claim could have been brought under § 502(a), and therefore is preempted by ERISA." (*Id.* at 11 (citing *Davila*, 542 U.S. at 211 ("Upon denial of benefits, [the plaintiff] could have paid for the treatment themselves and then sought

reimbursement through a [Section] 502(a)(1)(B) action, or sought a preliminary injunction.")).)

Defendants' Motion for Judgment on the Pleadings pursuant to claim Twenty-Five is **GRANTED**.

### C. New Jersey Law Against Discrimination Claims

Defendants argue Tellep does not have a claim for relief pursuant to the NJLAD because the NJLAD does not apply to insurance plans. (ECF No. 18-1 at 17–18.) Specifically, they rely on the New Jersey District Court case, *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, cited in this Court's previous opinion, which states in relevant part:

> Nothing in this act . . . shall be construed . . . to interfere with the operation of the terms or conditions and administration of any bona fide retirement, pension, employee benefit or insurance plan or program.

(ECF No. 9 at 14–15 (quoting *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 690 (D.N.J. 2002) (citing N.J. Stat. Ann. § 10:5-2.1); *see also Yourman v. People's Sec. Life Ins. Co.*, 992 F. Supp. 696, 703–04 (D.N.J. 1998) (finding "no indication from the New Jersey state legislature or state supreme court" for NJLAD to apply against *bona fide* insurance plans)).) Defendants also rely on a Third Circuit case, *ACLU v. Mukasey*, which advances "the 'law-of-the-case' doctrine [which] instructs that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (ECF No. 18-1 at 17 (citing 534 F.3d 181, 187 (3rd Cir. 2008)).) Defendants argue that, because "Plaintiff's [NJLAD] claims are identical to those in the First Amended Complaint," they must be dismissed." (*Id*. at 17.)

In the alternative, Defendants contend even if the NJLAD does apply, Tellep failed to state a claim for relief because "Plaintiff has failed to allege facts that are sufficient to show that the plaintiff has a plausible claim for relief." (*Id*. (citations omitted).) Defendants further argue

Tellep's claims under the NJLAD must be dismissed because the NJLAD is a state law and is therefore preempted by ERISA. (*Id*. at 17–18.)

Tellep's claims and allegations under his NJLAD claim in the Second Amended Complaint are identical to those alleged in his First Amended Complaint. (ECF No. 1-1 at 22–24 and ECF No. 11 at 20–22.) Therefore, the Court maintains its reasoning in its prior Opinion that Tellep fails to state a claim for relief because the NJLAD does not apply to insurance plans. (ECF No. 9 at 14–15.)[5]

Further, these claims would be dismissed regardless of whether the NJLAD applied, as they are preempted by ERISA, since they relate to the administration of benefits and could have been brought under ERISA. *See DiFelice*, 346 F.3d at 447–48.

Lastly, the Court notes Tellep does not oppose or respond to Defendant's argument regarding Tellep's failure to state a claim for relief under the NJLAD and only responds to the preemption claims as a whole. (ECF No. 19.) "The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count." *Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010); *see Duran v. Equifirst Corp.*, No. 09-3856, 2010 WL 918444, at *3 (D.N.J. Mar. 12, 2009) (dismissing eleven counts of a complaint because plaintiff waived those counts by failing to respond to the defendant's motion to dismiss those counts). As such, the NJLAD claim could be dismissed on this basis as well. Defendants' Motion for a Judgment on the Pleadings regarding Counts Nineteen through Twenty-One for violation of the NJLAD is **GRANTED**.

---

[5] A further analysis on this issue can be found in ECF No. 9.

## D.    Negligent Hiring and Supervision Claims

Similar to the argument made regarding the claims under the NJLAD, Defendants argue Tellep failed to state a claim for relief for negligent hiring and supervision. (ECF No. 18-1 at 18.) In the Second Amended Complaint, Tellep alleges Defendants were negligent when hiring the employees who provided Tellep with services. (ECF No. 11 at 22–24.) These allegations are identical to those made in his First Amended Complaint. (ECF Nos. 1-1 at 25–27 and 11 at 22–24.) The Court maintains, because "Plaintiff merely advances a conclusory statement, alleged Defendants negligently hired their employees without any further support or factual evidence. . . . Tellep's allegation fails to show his entitlement to relief." (ECF No. 9 at 15 (citations omitted).)

In the alternative, Defendant argues even if "Plaintiff's negligent hiring and supervision cause of action is somehow read to state a claim, that claim is completely preempted by ERISA because it arises from Defendants' administration of the Plan and . . . ERISA provides the exclusive civil enforcement scheme." (ECF No. 18-1 at 18 (citations omitted).) The Court agrees. Even if Tellep had sufficiently stated a claim for relief, these claims would be preempted by ERISA, as they are state claims that could have been brought under ERISA and relate to the administration of the plan as opposed to treatment decisions under the plan. *See DiFelice*, 346 F.3d at 447–48.

Tellep again fails to respond to Defendant's preemption argument regarding the claims of negligent hiring and supervision brought in Defendant's Motion for Judgment on the Pleadings. (ECF No. 19.) Therefore, as Tellep failed to deny the preemption claims made by Defendants, the claims may be taken as accepted by Tellep. *See Griglak*, 2010 WL 1424023 at *3; *see also Duran*, 2010 WL 918444 at *3. Defendants' Motion for a Judgment on the Pleadings regarding Counts Twenty-Two through Twenty-Four for negligent supervision and hiring is **GRANTED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (ECF No. 18-1) is **GRANTED**. All of Tellep's claims are **DISMISSED with prejudice** and this matter is marked **CLOSED**. An appropriate order will follow.


**Date:** August 29, 2019

        */s/ Brian R. Martinotti*
        **HON. BRIAN R. MARTINOTTI**
        **UNITED STATES DISTRICT JUDGE**